# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **BERNICE BYNUM**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **1:04cv2361-RBP** |
| | ) | |
| **VULCAN INDUSTRIES, a** | ) | |
| **division of EBSCO INDUSTRIES**, | ) | |
| **INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant Vulcan Industry's Motion for Summary

Judgment, filed on August 17, 2005.

### FACTS[1] AND PROCEDURAL HISTORY

The plaintiff, Bernice Bynum, a resident of Lincoln, Talladega County, Alabama, is an

African-American female presently employed in a quality assurance capacity[2] for defendant

Vulcan Industries, Inc. (Vulcan), located in Moody, St. Clair County, Alabama. Vulcan is a

division of EBSCO Industries, Inc. Bynum began work at Vulcan in September of 1997, when

she was hired as a quality control technician, and was initially paid on an hourly basis. Though

---

[1] The court notes where "facts" appear disputed.

[2] Bynum refers to herself as a "quality assurance manager," and there are personnel
records which label her as such. (*See, e.g.,* Def. Ex. 4.) Vulcan, however, points out that,
regardless of job title, Bynum's job description was supervisory, and not managerial, in nature.
(Def. Mem. at 2, n.2.)

1

she does not have a college degree, Bynum had worked in quality control for a prior employer. After being hired by Vulcan, she reported to Steve Brugge, a quality assurance manager, who supervised Bynum and three other quality technicians. Brugge's position was eliminated in 2001 as part of a corporate restructuring intended to reduce costs. As part of this same process, Bynum was promoted to her current position in November of 2001. She went from an hourly wage to an annual salary of $31,000. According to Bynum, during the summer of 2003, she requested a raise from her new supervisor, Mike Howell, manager of engineering. Howell told her he would discuss it with her at her next appraisal, which was to occur in September of 2003, as Vulcan does not have a policy of periodically raising compensation at set intervals.

On or about September 11, 2003, Bynum received her Personnel Review and Appraisal from Howell. Bynum was given an overall rating of satisfactory. She was not given a pay increase. On September 18, 2003, Bynum questioned William Hutson, a general manager, about a possible pay increase. Hutson informed Bynum that Vulcan was not doing well and that pay raises were only given to those who are exceptional performers, or have not had a pay increase in some time. Hutson also told Bynum that he would meet with Howell and that Howell would discuss the issue with her. On September 22, 2003, Howell told Bynum that all pay raises were on hold. According to Howell, pay raises were only being given to workers who exceeded performance expectations. Bynum, according to Howell, was only a satisfactory worker, and did not merit a pay increase.

In December of 2003, Vulcan hired James Raynor as plant manager. Shortly thereafter, Bynum approached Raynor to discuss her salary. Raynor told Bynum that he wanted to evaluate her work before determining whether or not a pay increase was appropriate. In May of 2004,

2

Raynor met with Bynum, provided her with a list of goals and objectives for the upcoming year,

including "Schedule and attend at least one educational course in the field of Cost of Quality,

Continuous Improvement, Management and Motivation Techniques, etc." (Pl. Ex. 3) At that

time, Raynor recommended her for an increase in salary from $31,000 to $35,000 per year. This

pay increase went into effect on June 1, 2004. As of May 17, 2005, Bynum had failed to schedule

any classes, and Raynor, noting that Bynum's poor communication skills have resulted in

complaints by other employees, arranged for Bynum to attend three-day courses in

"Communicating with People" and "Managing Employment Conflict" at the University of

Alabama. (Pl. Ex. 1.)

        In November of 2003, Bynum filed a charge of discrimination with the EEOC, alleging

both racial and gender discrimination. (Def. Ex. 1.) The EEOC issued Bynum her right to sue

notice on May 3, 2004. (Def. Ex. 3.) On July 30, 2004, Bynum filed this action against defendant

Vulcan Industries, Inc. In Count One, titled "Discrimination Based on Race", Bynum alleges that

Vulcan "engaged in unlawful employment practices by failing to treat the Plaintiff in the same

manner in which they treated the white, male employees in positions similar to the Plaintiff's."

(Compl.) Bynum goes on to claim that "[t]he only differences between the Plaintiff and those

who received the raises are her gender and her race, " and "[t]he Plaintiff was denied an

employment benefit afforded to other individuals based on her gender and her race." (Compl.)

        On December 8, 2004, the defendant Vulcan Industries, Inc. filed an Answer to Bynum's

Complaint. In its Answer, Vulcan asserts as its First Defense that Bynum has failed to state a

claim for which relief can be granted. As its Second Defense, Vulcan asserts that "[t]o the extent

that Plaintiff complains of personnel actions and decisions occurring more than one hundred

eighty (180) days prior to November 28, 2003 (the date upon which Plaintiff filed her administrative charge), such claims are barred because they are not the subject of a timely EEOC charge, a necessary condition precedent to suit on such claims." As its Third Defense, Vulcan asserts that any action or inaction taken as to Bynum was done for a legitimate business reason, and not on the basis of race or sex. As its Fourth, Fifth and Sixth Defenses, Vulcan claims that any differences in salary between Bynum and other Vulcan employees were based on differences in skill, effort, responsibility, and other factors, not race or gender. As its Seventh Defense, Vulcan claims that "[a]ny claim for damages other than differences in compensation is limited by operation of the statutory limits on recoveries of compensatory and punitive damages Under Title VII of the Civil Rights Act of 1964, as amended." Finally, Vulcan denies fully the merit of any claim pressed against it by Bynum, and demands a judgment in its favor with attorney's fees.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-

moving party "must either point to evidence in the record or present additional evidence

'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted).

Summary judgment is required where the non-moving party merely repeats its conclusory

allegations, unsupported by evidence showing an issue for trial.  *Comer v. City of Palm Bay,* 265

F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for

discovery.  *Comer*, 265 F.3d at 1192.  Moreover, "[w]hen deciding whether summary judgment

is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a

light most favorable to the non-moving party."  *Korman v. HBC Florida, Inc.*, 182 F.3d 1291,

1293 (11th Cir. 1999).  Finally, the trial court must resolve all reasonable doubts in favor of the

non-moving party, although it need not resolve all doubts in a similar fashion.  *Earley v.

Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

### ARGUMENTS[3]

## I.    **Defendant Vulcan's Motion.**

Vulcan argues that summary judgment is appropriate because Bynum cannot establish a

*prima facie* case of race and gender discrimination under Title VII.[4] Vulcan relies on *McDonnell*

---

[3] This section summarizes the arguments made by the parties and does not necessarily
reflect the conclusions reached by the court.

[4]Vulcan points out in its Memorandum in Support of Its Motion for Summary Judgment
that Bynum's only claim in her Complaint is for race discrimination on the basis of her pay in
violation of Title VII. (Compl.) Although it is true that Bynum labeled Count One, the only count
in her complaint, as "Discrimination Based on Race", she notes as part of that count that "[t]he
only differences between the Plaintiff and those who received the raises are her gender and her
race," as well as, "[t]he Plaintiff was denied an employment benefit afforded to other individuals

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), for the assertion that Bynum must first establish a *prima facie* case of discrimination. Vulcan must then articulate nondiscriminatory reasons for the action in question. Vulcan asserts that Bynum must then produce evidence tending to show that Vulcan's reasons are pretextual. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169 (11th Cir. 2005). Furthermore, Vulcan cites *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993), for the assertion that Bynum must also prove that the reason for the decisions was intentional race discrimination. At all times, according to Vulcan, Bynum bears the risk of non-persuasion. Vulcan further argues that any complaints Bynum may have about her pay or job duties when she was promoted to her salaried position in November of 2001 are time barred.[5]

### A.    Plaintiff's wage discrimination claim fails because she cannot identify any similarly situated white and/or male employee who is paid more.

According to Vulcan, to establish a claim for intentional wage discrimination under Title VII, Bynum must show that (1) she is a member of a protected class, (2) similarly situated comparators outside of the protected class received higher compensation, and (3) she was qualified to receive the higher wage. *Cooper v. Southern Company*, 390 F.3d 695, 734-735 (11th

---

based on her gender and her race." Bynum, therefore, sets out the elements of gender discrimination within her racial discrimination claim. Vulcan does not believe that a claim of gender discrimination is before the court. The court disagrees.

[5]Specifically, Vulcan claims: "In her deposition, Plaintiff also alleges that she was discriminated against because she believes her job duties changed and her pay was too low when she voluntarily accepted the promotion to quality assurance supervisor in November 2001. (Plaintiff Dep. 8). For her Title VII claims to be timely they must have occurred within 180 days of the filing of Plaintiff's charge of discrimination or before June 1, 2003. 42 U.S.C. § 2000e-5(e)(1). As a result, any complaints about her pay or job duties when she knowingly and voluntarily accepted the position in November 2001 are time barred." In a separate letter addressed to this Court, dated August 25, 2005, Vulcan cites the recent Eleventh Circuit case of *Ledbetter v. Goodyear Tire & Rubber Co., Inc*., 421 F.3d 1169 (11th Cir. 2005), in support of this argument.

Cir. 2004). Vulcan claims that Bynum's *prima facie* case fails because she has no evidence that

she made less than similarly situated white or male employees. Vulcan, in support of that claim,

asserts that Bynum's identification of Vulcan employees Dean Smith, Billy Smith, Roger

Edwards, Donnie Carlton, Rick Sellers, Ricky Stephens, Bill Geoff, and Joe Culpepper as

examples of white males being hired or compensated at a higher rate is invalid because none of

these is a valid comparator. Each has different duties and responsibilities, works in a different

department, and, in some cases, is supervised by someone other than Bynum's supervisor.

Vulcan asserts that Stephens and Carlton are hourly employees, never having held a

salaried position. Bynum, on the other hand, is a salaried employee and, according to Vulcan,

hourly and salary employees cannot be similarly situated in terms of pay, because of overtime

considerations. Vulcan quotes *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), for the

assertion that "the plaintiff must show that [s]he and the [white] employees are similarly situated

in all relevant aspects."

According to Vulcan, the salaried jobs held by Dean Smith, Billy Smith, Edwards,

Sellers, Geoff and Culpepper are production positions which require technical knowledge and

skills, including machinery operation, welding, wiring, sheet metal forming and fabrication.

Bynum's position, according to Vulcan, does not require these skills or technical knowledge.

Vulcan claims that these employees are not proper wage comparators, since they work in

different areas and perform different jobs than Bynum. Vulcan claims, "[t]he comparators must

perform jobs similar to the plaintiff's; thus, the plaintiff must show that, in her job, she 'shared

the same type of tasks' as the comparators." *Cooper*, 390 F.3d at 735; *Cf. Watkins v. Sverdrup

Tech. Inc.*, 153 F.3d 1308, 1315 (11th Cir. 1998) (holding that the plaintiff's failure to identify

any employees similarly situated to herself was "fatal" to her *prima facie* case of discrimination).

Bynum, according to Vulcan, is the only quality assurance supervisor. Vulcan asserts that, while Bynum may claim that she is paid less than other quality assurance supervisors in "the industry," she has not provided any evidence supporting this claim. Because Bynum cannot identify any similarly situated white employee who was paid more than she was, she cannot establish a *prima facie* case of race or gender discrimination, according to Vulcan. Vulcan cites *Mayfield v. Patterson Pump. Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) and *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988), for the rule that conclusory allegations or beliefs are not enough to defeat a motion for summary judgment, and asserts that Bynum's wage discrimination claims are due to be dismissed.

### B.    Plaintiff's belief that other employees label her as difficult to work with is not actionable under Title VII.

Vulcan claims that Bynum is complaining that she has been treated less favorably than white, male employees because she believes she has a difficult time getting people to work with her. Vulcan asserts that this is a "terms and conditions" discrimination claim, and that, to succeed, Bynum must show that (1) she was a member of a protected class, (2) she suffered an adverse employment action, and (3) individuals outside of the protected class were treated more favorably. *McDonnell Douglass Corp.*, 411 U.S. at 802 (1973). Vulcan claims that Bynum will not be able to satisfy the elements of such a terms and conditions discrimination claim.

Vulcan asserts that Bynum's belief that other Vulcan employees cannot get along with her "has nothing to do with her race or gender." Instead, according to Vulcan, any friction between Bynum and other employees stems directly from Bynum's position as quality assurance

supervisor. Vulcan claims that Bynum's job is to inspect the product and reject it if it does not conform to quality standards. Vulcan notes that Bynum testified that she "think[s] people have a tendency to take it personal and not that, hey I'm just doing my job when we reject anything." Vulcan also claims that Bynum has not presented evidence that work tensions are somehow related to her race or gender. For instance, when asked whether her poor relationship with Billy Smith was based on her race or gender, Bynum testified: "I don't know what his problem was...I think a lot of it was the fact that he was frustrated with the job because there was a lot of defective parts that were coming out of E weld, and I thought he might have just started taking it personal...." Vulcan asserts that Bynum cannot show that her perceived tensions at work were due to her gender or race.

Vulcan finally claims that Bynum cannot show that she suffered any adverse employment action as a result of her belief that employees felt she was difficult to work with. According to Vulcan, Bynum cannot identify any serious and material changes in her working condition. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001) (holding that to establish an adverse employment action, a plaintiff must show a "serious and material" change in the terms and conditions of her employment). Furthermore, according to Vulcan, Bynum's belief that production employees do not get along with her is "simply not enough" to qualify as an adverse employment action. *Id*. ("[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."). Ultimately, Vulcan asserts that Bynum cannot establish that she has suffered an adverse employment action and cannot identify any similarly situated white employee whom Vulcan treated more favorably, and therefore Vulcan is

9

due summary judgment on Bynum's Title VII race and gender discrimination claims.

**II.     Plaintiff's Response to Defendant Vulcan's Motion.**

Bynum claims that she makes two claims in her lawsuit against Vulcan: (1) That she has been denied equal pay based on her race; and (2) that she has been denied equal pay due to her gender. According to Bynum, the individuals responsible for the discriminatory conduct are William Hutson, Mike Howell, and James Raynor. In support of these contentions, Bynum has submitted an employment status change form with a payroll request change form, showing her promotion to the position of Quality Assurance Manager and starting salary of $31,000, and a title page from the Vulcan Industries website listing her as the Quality Manager. Bynum notes that the website does not include a list of supervisors.

According to Bynum, she inquired about a pay raise in July of 2003. Bynum claims that, in September of 2003, Mike Howell, her immediate supervisor, met with William Hutson, the general manager. At that meeting, Bynum asserts, Howell and Hutson discussed whether or not Bynum should receive a pay raise and that it was agreed that Bynum's performance did not merit an increase. According to Bynum, this meeting occurred before her performance evaluation had been prepared. In support of this assertion Bynum proffers the deposition of Mike Howell, a letter Howell wrote for his file in which he details his September 22, 2003 meeting with Bynum, and an email from Bynum to Howell, dated September 26, 2003, requesting that a meeting regarding quality plan revisions be moved from Monday, September 29th, because of Bynum's vacation on that day.

Bynum claims that she sought out information regarding a pay raise from James Raynor in December of 2003, and again in May of 2004. Raynor set out a list of goals for Bynum.

According to Bynum, one of those goals was to attend a training class, which Raynor wanted Bynum to set up for herself. Bynum claims that when she told Raynor that she was having difficulty finding a class, he told her that she "just needed to know where to look." In the meantime, according to Bynum, Raynor had already set up a class for four white supervisors at the plant. Bynum claims that her inability to set up a class would negatively impact any future performance evaluation, affecting her ability to obtain a pay raise. Bynum notes that Raynor eventually set up a class for Bynum, but not until the white supervisors had been through at least one stage of class, and Raynor had written Bynum up for failing to register on her own. In support of the above, Bynum offers her own affidavit, Raynor's deposition, a letter, dated May 17, 2005, to Bynum from Raynor reflecting Bynum's failure to schedule and attend at least one educational course in management, a file memo in which Raynor details an event in which a supervisor allegedly referred to one working space as "the ghetto," and Raynor's handling of that event, Bynum's objective sheet, and a payroll change request form, signed by Raynor, requesting an increase of Bynum's salary from $31,000 to $35,000.

According to Bynum, she does not contend that there is a position exactly like hers at Vulcan Industries. She does, however, contend that there are other positions that are similar to hers in terms of the number of individuals supervised, the training required to perform the respective job descriptions, and the years of experience in each of the positions. Bynum claims that two of these positions are held by Glenn Bates and Marty McGuire, both white males, each of whom makes six to seven thousand dollars more than Bynum, even though they each supervise roughly the same number of employees and have a similar amount of experience to Bynum. Furthermore, according to Bynum, her job requires more technical expertise than

11

McGuire's. Bynum further asserts that she was making in the lower 25% range of the salary for a

Quality Assurance Supervisor I position for the geographical area in which Vulcan Industries

operates. In support of these claims, Bynum submits her own affidavit, Hutson's affidavit, the

May 18, 2004 payroll change request form, McGuire's resume, application for employment with

Vulcan Industries, and various evaluations, and Bates' resume, application for employment with

Vulcan Industries, and various evaluations. Bynum re-asserts all of the above arguments with

respect to her gender discrimination claim.

III.    **Defendant Vulcan's Memorandum in Further Support of Its Motion for Summary
        Judgment.**

        **A. Plaintiff cannot present any evidence that she was subjected to wage
        discrimination because of her race.**

        Vulcan begins by claiming that a number of Bynum's evidentiary listings have not been

properly submitted to the court, and that her own affidavit is objectionable as violative of Fed. R.

Civ. Pro. 56(e) because parts of it are not based on personal knowledge, contain allegations about

which Bynum is not competent to testify, or otherwise inadmissible.[6] According to Vulcan,

_____

[6]Specifically, Vulcan states:
This Court's Submission Order requires Vulcan to "admit or deny that there is a
source for the listed evidence" as cited by Plaintiff. Plaintiff cites Exhibits A through
G in support of her allegations. These exhibits were not filed with the Court by
Plaintiff, although Vulcan received a copy of the exhibits in the mail on September
6, 2005. Some of the exhibits relied on by Plaintiff were filed with the Court in
Vulcan's evidentiary submission (Mike Howell's deposition, James Raynor's
deposition, and William Hutson's affidavit). One of Plaintiff's exhibits is her
affidavit which attaches two personnel files. The affidavit does not comply with
Federal Rule of Civil Procedure 56(e) because portions of it are not based on
personal knowledge, contain allegations about which Plaintiff is not competent to
testify, or is otherwise inadmissible. Because the affidavit has not been properly filed
with the Court, Vulcan reserves its right to file a motion to strike all or portions of the
affidavit to the extent Plaintiff remedies the lack of filing and this Court were to
consider the affidavit.

Bynum alleges (1) she was promoted to the quality assurance "manager" position in November 2001, (2) she was denied a pay raise in September 2003, (3) Raynor did not enroll her in an off-site training class until May 2005, (4) shipping and receiving supervisor Bates and maintenance supervisor McGuire are paid more, and (5) Bynum's supervisor made an on-line  market comparison when he awarded her a raise in May 2004. Vulcan claims that none of these demonstrate racial discrimination against Bynum. Moreover, Vulcan argues, there is no evidence of racial or gender animus attributed to any Vulcan decisionmaker.

**1. Plaintiff's job title is not material to her claim**.

Though Vulcan admits that Bynum was promoted to a salaried quality assurance position, and there are documents in her personnel file which incorrectly refer to her as a quality assurance "manager," these facts are irrelevant to her wage discrimination claim. Vulcan claims that Bynum's job is supervisory in nature, and that it is undisputed that the quality assurance manager job, which was held by Steve Brugge, was eliminated as part of a corporate restructuring in November 2001. According to Vulcan, Bynum cannot identify any employee who performs similar job duties to hers, as none exists.

**2. Plaintiff cannot rebut Vulcan's legitimate non-discriminatory reasons related to any pay decisions made in September 2003.**

According to Vulcan, any pay decisions made in September of 2003 were based exclusively on performance; pay raises were given only to those employees who exceeded performance expectations. Vulcan also argues that Bynum has based her complaint partially on a meeting between Howell and Hutson which occurred before Bynum's performance review. To argue that discussing Bynum's performance before the actual review demonstrates racial animus

is, according to Vulcan, nonsensical. Vulcan claims that Bynum received an overall "satisfactory" rating at her September 2003 evaluation, and was not given a raise at that time because she was not an exceptional performer.

### 3. Plaintiff's speculation that her failure to sign up for a training class may affect her future pay is not enough to demonstrate intentional race discrimination.

According to Vulcan, after Bynum's May 2004 meeting with Raynor, after which Bynum's salary was raised to $35,000, Bynum was given a list of seven goals and objectives for 2004-2005. One of those goals was to "schedule and attend at least one educational course in the field of Cost of Quality, Continuous Improvement, Management and Motivation Techniques, etc." Vulcan claims that Raynor also assigned a similar objective to other supervisors. According to Vulcan, Raynor wanted the supervisors to take the initiative of identifying their own deficiencies and scheduling classes to address those deficiencies. Vulcan claims that, when several supervisors, including Bynum, failed to set up classes on their own, Raynor scheduled classes for them. According to Vulcan, Bynum has yet to accomplish five of the goals set out for her by Raynor.

Vulcan argues that Bynum's speculation that her failure to schedule a class may negatively impact her future salary is not actionable, and, to the extent it is a claim, it is premature. Vulcan claims that such a belief does not suffice to show intentional discrimination. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (holding conclusory allegations or belief are not enough to defeat a motion for summary judgment); *Young v. General Foods Corp.*, 840 F. 2d 825, 830 (11th Cir. 1988) (same); *see Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (noting that an adverse employment action "cannot be

speculative and must at least have a tangible adverse effect on the plaintiff's employment" and holding that to prove an adverse employment action "an employee must show a serious and material change in the terms, conditions, or privileges of employment"). According to Vulcan, Bynum cannot present any evidence that she has been treated less favorably than similarly situated employees.

### 4. Glenn Bates and Marty McGuire are not proper comparators.

Though Vulcan concedes that Bates and McGuire are, in fact, paid more than Bynum, Vulcan argues that neither are similarly situated, and therefore are not proper comparators for an intentional wage discrimination allegation. Vulcan notes that, to establish wage discrimination under Title VII, Bynum must show that (1) she is a member of a protected class, (2) similarly situated comparators outside of the protected class received higher compensation, and (3) she was qualified to receive the higher wage. *Cooper v. Southern Co.*, 390 F.3d 695, 734-35 (11th Cir. 2004). Vulcan argues that Bynum admits that there is no other quality assurance job like hers at Vulcan. According to Vulcan, Bynum's claim that Bates and McGuire are similar to her because they supervise the same number of employees and have similar amounts of experience within their relative fields is not dispositive. Vulcan argues that the relative inquiry is whether Bynum, McGuire and Bates had the same type of job tasks and duties. *See Cooper*, 390 F.3d at 735 ("The comparators must perform jobs similar to the plaintiff's; thus, the plaintiff must show that, in her job, she 'shared the same type of tasks' as the comparators."). Vulcan claims that McGuire is a shipping and receiving supervisor currently overseeing seven employees. McGuire, Vulcan notes, is not supervised by Howell. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (noting that to compare plaintiff to white employees "the plaintiff must show that [s]he

15

and the [white] employees are similarly situated in all relevant aspects"). Bates, according to Vulcan, is the maintenance supervisor and currently oversees three employees. Vulcan argues that Bates' job requires maintenance expertise which Bynum does not possess. In fact, Vulcan claims, Bynum does not perform "any tasks similar to those performed by McGuire or Bates." Resultantly, according to Vulcan, neither Bates nor McGuire are proper comparators.

**5. Plaintiff's May 2004 raise was not discriminatory.**

Vulcan claims that Bynum appears to allege that Raynor somehow discriminated against her when he recommended her for a raise from $31,000 to $35,000 per year. According to Vulcan, Raynor did some online research to determine the proper pay scale for someone employed in a position similar to Bynum's. Vulcan notes that this was an 11.5% increase over her previous salary. Vulcan argues that there was nothing discriminatory about this recommendation. Vulcan further argues that Bynum has failed to present any evidence that Vulcan has engaged in any discriminatory conduct.

**B. Plaintiff's gender discrimination claim is not properly before this Court.**

Vulcan argues that Bynum's gender discrimination claim is not properly before the court, because Bynum's only claim in her Complaint is for race discrimination on the basis of her pay in violation of Title VII. However, Vulcan claims that, to the extent Bynum has properly pled a claim of gender discrimination, Vulcan adopts and incorporates all of the arguments above to rebut that claim.

**CONCLUSIONS OF THE COURT**

The court concludes that plaintiff has not offered evidence of any comparator who is similarly situated to the plaintiff. Further, plaintiff has offered only conclusory allegations of

16

intentional race and gender discrimination. In essence, plaintiff has proved that she is dissatisfied with her salary. She then assumes, without proof, that the only explanation is discrimination. The court will grant the defendant's motion. *Compare Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1251-1255 (11th Cir. 2000) and *Cofield v. Goldkist, Inc.*, 267 F.3d 1267, 1268-69 (11th Cir. 2001).

This 5th of October, 2005.


**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**